## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MAGGIE DETMAR AND )
MIKAYLA WILSON )
  )
   Plaintiffs, )
  ) CIVIL ACTION FILE
v. ) NO._____
  )
RENEWABLE ENERGY HOLDING )
OF GEORGIA, LLC, CASH )
ENVIRONMENTAL )
RESOURCES, LLC, GREEN )
ENERGY TRANSPORT LLC, )
COASTAL LANDFILL DISPOSAL OF )
FLORIDA, LLC, DIXIE MATERIAL )
RECOVERY, LLC AND INDIVIDUAL )
DEFENDANT ERIC CASH )
  ) **JURY TRIAL DEMANDED**
  )
   Defendants. )

## COMPLAINT

COMES NOW Plaintiffs Maggie Detmar ("Ms. Detmar") and Mikayla Wilson ("Ms. Wilson or collectively "Plaintiffs") and submits the following Complaint against Defendants (1) Renewable Energy Holdings of Georgia LLC ("Renewable"), (2) Cash Environmental Resources, LLC ("Cash"), (3) Green Energy Transport LLC ("Green"), (4) Coastal Landfill Disposal of Florida ("Coastal") (5) Dixie Material Recovery, LLC ("Dixie" or collectively "Joint Employers"), and (6) individual Defendant Eric Cash ("Mr. Cash").

## **INTRODUCTION**

Joint Employers are a collection of LLCs all owned and operated by Mr. Cash (W/M) as one entity, here called Joint Employers.  Joint Employer does business in the form of construction, demolition, trucking and they operate landfills.   Both Plaintiffs were physically located at a landfill, and Plaintiff Detmar also worked at Joint Employers Corporate Headquarters in Vinings GA.  Both Plaintiffs did work for multiple Defendants.  Plaintiff Detmar (W/F) was hired by Joint Employers in June 2018.  Her daughter Plaintiff Wilson (AA/F) was hired by Joint Employers in November 2018.  During the course of their employment, Plaintiffs were subjected to both a racially and sexually hostile work environment.  The sexual harassment included both touching, frequent comments, and co-workers watching pornography.  The racial discrimination included frequent use of the N-word, and comments by co-workers saying how he wanted to F*** a black girl, and similarly racially hostile language. Both Plaintiffs made complaints during the course of their employment, but generally no action was taken by Defendants to reduce the harassment, and often afterwards co-workers would joke with them about the subject matter of their complaints.  In February 2020, Defendant Joint Employers issued an Employee Handbook.  This handbook contained a sexual harassment policy.  That very day, a co-worker, Tyler Long (W/M) came up behind Plaintiff Detmar and grabbed her

rear.  Plaintiff Detmar jumped toward a long black pole used to un-tarp trucks.  Mr. Long poked Plaintiff Detmar again and commented that he "forgot that she liked black poles" and began laughing.  Plaintiff Detmar told Mr. Long to "stop", but he grabbed Ms. Detmar's breast and said, "let me feel your heartbeat".  Plaintiff Detmar had enough sexual harassment.  She followed the new sexual harassment policy and made a complaint of sexual harassment to John Murchie (W/M) the director of Operations for Joint Employers.  After Plaintiff Detmar told Mr. Murchie what happened, Mr. Murchie asked Plaintiff if she flirted with Mr. Long or what she did to provoke him.  Mr. Murchie dismissively said he would look into it, but he immediately ruled out termination.  Mr. Murchie seeing that Plaintiff Detmar was unhappy, then began to retaliate.  He said, "what's been going on with you?  Your work is falling off lately." Plaintiff was shocked, as she had never been counseled before her complaint about her work performance.  After, this incident both Plaintiff Detmar and Plaintiff Wilson filed EEOC charges and they suffered a series of incidents of further sexual harassment and retaliation, ultimately resulting in both of their terminations.  Plaintiff Wilson was terminated on April 7, 2020.  Plaintiff Detmar was terminated on August 10, 2020.  In fact, Plaintiffs were discharged by their Joint Employers in retaliation for their complaints of sexual harassment and race discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e *et seq.* ("Title VII") and 42 USC Section 1981 *et seq.* ("1981").

## JURISDICTION AND VENUE

1.      Plaintiffs' claims present federal questions over which this Court has jurisdiction under 28 U.S.C. §§ 1331, Title VII and 1981, and this Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367.

2.      This Court is an appropriate venue for all of Plaintiffs' claims under 28 U.S.C. § 1391(b) and (c) because all of the parties reside within the Northern District of Georgia, and the substantial majority of events giving rise to Plaintiffs' claims occurred in this judicial district.

## ADMINISTRATIVE PROCEEDINGS

3.      On February 6, 2020, Plaintiff Detmar filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Cash. Attached hereto and incorporated herein is **Exhibit A**.

4.      On February 17, 2020 Plaintiff Wilson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Cash. Attached hereto and incorporated herein is **Exhibit B**.

5.      On November 23, 2020 Plaintiff Detmar filed a 2nd Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") Attached hereto and incorporated herein is **Exhibit C**.

6.     The EEOC has issued Right To Sue Letters for the two February 2020 EEOC Charges.  Attached hereto and incorporated herein is **Exhibit D**.

7.     The EEOC has not yet issued a Right to Sue for the November 2020 EEOC charge.

8.     Plaintiffs intend to amend this lawsuit when the November EEOC charge's Right to Sue Letter is issued.

9.     With regard to the EEOC Charges attached as Exhibit A and B, Plaintiffs have exhausted their administrative remedies prerequisite to filing this suit pursuant to Title VII.

10.    This suit has been commenced within 90 days of Plaintiffs' receipt of their right to sue letters.

## **PARTIES**

11.    Plaintiffs are citizens of the United States and residents of the state of Georgia.

12.    Plaintiffs are female and members of a protected class under both Title VII and 1981.

13.    Plaintiffs were employees of Joint Employers at all times material to this Complaint, concluding with their unlawful retaliatory termination.

14.    Cash is a LLC licensed to do business in Georgia.  Defendant transacts business in the Northern District of Georgia.

15.    Cash is subject to this Court's jurisdiction and may be served with process through its registered agent for service of process.

16.    Renewable is an LLC licensed to do business in Georgia.  Defendant transacts business in the Northern District of Georgia.

17.    Renewable is subject to this Court's jurisdiction and may be served with process through its registered agent for service of process.

18.    Green is an LLC licensed to do business in Georgia.  Defendant transacts business in the Northern District of Georgia.

19.    Green is subject to this Court's jurisdiction and may be served with process through its registered agent for service of process.

20.    Coastal is a Florida LLC.  Defendant transacts business in the Northern District of Georgia.

21.    Coastal is subject to this Court's jurisdiction and may be served with process through its registered agent for service of process.

22.    Dixie is an LLC.  Defendant transacts business in the Northern District of Georgia.

23.    Dixie is subject to this Court's jurisdiction and may be served with process through its registered agent for service of process.

24.    Individual Defendant Mr. Cash is subject to this Court's jurisdiction and may be served with process through its registered agent for service of process.

## FACTUAL ALLEGATIONS

25.     Some of the Joint Employers individually employ 15+ employees for each working day in each of twenty or more calendar weeks throughout 2020.

26.     Collectively Joint Employers employ well over 15 employees for each working day in each of twenty or more calendar weeks throughout 2020.

27.     Joint Employers are subject to the anti-discrimination and anti-retaliation provisions of both Title VII and 1981.

28.     At all times material to this Complaint, Joint Employers had control over both Plaintiffs' employment and the terms and conditions thereof.

29.     Joint Employers are true joint employers.  Upon information and belief, each Defendant had authority to exercise control over the terms and conditions of Plaintiffs' employment, specifically but not limited to their job assignments, hours, pay, benefits, promotional opportunities, and each had the ability to hire and fire Plaintiffs.

30.     Joint Employers are indistinguishable as they operate as an integrated enterprise with the same ownership, and same managers for all LLC's.

31.     For example, Renewable is an LLC owned and operated by Eric Cash.

32.     Green is an LLC owned and operated by Eric Cash.

33.     Cash is an LLC owned and operated by Eric Cash.

34.     Dixie is an LLC owned and operated by Eric Cash.

35. Coastal is an LLC owned and operated by Eric Cash.

36. Eric Cash is a white male (hereinafter W/M).

37. John Murchie is the Chief Operating Officer (COO) for Renewable.

38. John Murchie is the Chief Operating Officer (COO) for Green.

39. John Murchie is the Chief Operating Officer (COO) for Cash.

40. John Murchie is the Chief Operating Officer (COO) for Dixie.

41. John Murchie is the Chief Operating Officer (COO) for Coastal.

42. John Murchie is a W/M.

43. Carson Cash is the Director of Legal and Business Affairs for Renewable.

44. Carson Cash is the Director of Legal and Business Affairs for Green.

45. Carson Cash is the Director of Legal and Business Affairs for Cash.

46. Carson Cash is the Director of Legal and Business Affairs for Dixie.

47. Carson Cash is the Director of Legal and Business Affairs for Coastal.

48. Carson Cash is a W/F.

49. Renewable, Cash, Green, Coastal and Dixie all have the same management team.

50. The entire management team of Renewable, Cash, Green and Coastal is white.

51.    Renewable, Cash, Green, Coastal, and Dixie all share equipment and other personal property.

52.    Renewable, Cash Green, Coastal and Dixie all operate business connected with Construction, transportation and/or landfills.

53.    Plaintiff Detmar (W/F) was hired by Joint Employers in June 2018.

54.    Her daughter Plaintiff Wilson (AA/F) was hired by Defendant Employers in November 2018.

55.    In October 2019, Plaintiff Detmar was promoted to North Georgia Office Manager.

56.    After Plaintiff's promotion Plaintiff Detmar did certain accounting functions for all of the LLC's.

57.    Plaintiff Detmar was told by Danielle Adair, office manager, that Mr. Cash ideally wanted each of the LLC's to have under 15 employees so that civil rights laws didn't apply to them.

58.    Plaintiff's boss was John Murchie.

59.    Plaintiff had to log into the QuickBooks Accounting program with Mr. Murchie's password which was "Bigsexy".

60.    During the course of their employment, Plaintiffs were subjected to both a racially and sexually hostile work environment.

61.    The sexual harassment included both touching and frequent comments.

62.   For example, Plaintiffs were subjected to common use of the N-word to describe African Americans.

63.   Plaintiff Detmar found use of the N-word or other racially hostile terms directed toward African Americans particularly offensive as her daughter is Plaintiff Wilson is African American.

64.   A co-worker told Plaintiff Wilson that he wanted to F*** a black girl.

65.   A co-worker told Plaintiff Wilson that he would like to be a security guard at a female jail so he could rape the female inmates.

66.   A co-worker told Plaintiff Wilson that he enjoyed sexually abusing his cat.

67.   Both Plaintiffs worked with co-workers who frequently talked about pornography.

68.   Both Plaintiffs worked with co-workers who frequently engaged in unwelcome sexually explicit conversations.

69.   Both Plaintiffs worked with co-workers who frequently made prejudicial comments about Hispanics and/or people of other races.

70.   Both Plaintiffs made complaints of discrimination during the course of their employment, but no action was taken by Defendants to reduce the harassment.

71.   On February 4, 2020 Joint Employers issued a Joint Employee Handbook for all employees of Cash, Green, Coastal, and Renewable.

72.    The handbook made no distinction between which LLC an employee worked for.

73.    All employees of the LLC's are referred to in the 2020 Employee Handbook as employees of Cash.

74.    All employees of the LLC's are referred to make complaints of sexual harassment to John Murchie.

75.    Before the issuance of the 2020 Employee Handbook, Plaintiffs had not been issued an Employee Handbook.

76.    Upon information and belief, before the issuance of the 2020 Employee Handbook, Joint Employers didn't disseminate an Employee Handbook to either Plaintiff nor did they disseminate a sexual harassment policy.

77.    The 2020 Employee Handbook contained a sexual harassment policy.

78.    The 2020 Employee Handbook sexual harassment policy says that if you have been sexually harassed you should notify the Director of Operations and Business Development.

79.    During Plaintiffs' term of employment with Joint Employers, John Muchie was Defendant Joint Employers' Director of Operations and Business Development.

80.    On February 4, 2020, a co-worker of Plaintiff Detmar, Tyler Long (W/M) came up behind Plaintiff Detmar and grabbed her rear.

81.     Plaintiff Detmar was startled by the assault and she jumped toward a large black pole used to un-tarp tucks.

82.     Mr. Long poked Plaintiff Detmar again and commented that he "forgot that she liked black poles" and he began laughing.

83.     Plaintiff Detmar told Mr. Long to "stop", but he persisted and grabbed Plaintiff Detmar's breast and said, "let me feel your heartbeat".

84.     Plaintiff had enough sexual harassment.  She followed the new sexual harassment policy and later that day made a complaint of sexual harassment to John Murchie the director of Operations for Defendant Employers.

85.     After Plaintiff Detmar told Mr. Murchie what happened, Mr. Murchie asked Plaintiff if she flirted with Mr. Long or what she did to provoke him.

86.     Mr. Murchie said he would look into it, but he immediately ruled out termination.

87.     Mr. Murchie could tell that Plaintiff Detmar was upset and disappointed with his reaction to her complaint.

88.     Mr. Murchie was angry that Plaintiff Detmar would not let this issue go.

89.     Mr. Murchie said to Plaintiff "what's been going on with you?  Your work is falling off lately."

90.     Plaintiff was shocked, as she had never been counseled about her work performance before this.

91.     On February 6, Plaintiff Detmar filed an EEOC charge.

92.     On or around February 9 and February 10, Plaintiff Wilson made internal complaints of sexual harassment and race discrimination.

93.     On February 17, Plaintiff Wilson filed an EEOC charge.

94.     After the Plaintiffs filed EEOC charges, the Joint Employers began a campaign of retaliation.

95.     For example, Plaintiffs were involuntarily transferred.

96.     In mid-March, 2020, Plaintiff Wilson was called an n-word again by a customer.  Plaintiff complained but upon information and belief no action was taken.

97.     In late March or early April, 2020 Plaintiff Wilson had contact with someone who might have COVID.  Plaintiff Wilson and her mother notified the Joint Employers of a need to quarantine.  Plaintiffs were not treated the way that other employees were treated.  Specifically, Ms. Cash told both Plaintiffs that they needed to work until they had symptoms.  Further, they were told that they would not be paid for time they missed while quarantining.

98.     In April, 2020, Plaintiff Wilson was terminated in retaliation for her complaints of discrimination.

99.   Plaintiff Detmar had been provided a company rental car paid for by the Joint Employers.

100.   Shortly after her complaint of discrimination, Mr. Muchie told Plaintiff Detmar to return her car to Enterprise.

101.   The Joint Employers never renewed Plaintiff's rental car contract, leaving Plaintiff Detmar without transportation and forcing her to buy herself a car.

102.   Mr. Murchie kept telling Plaintiff Detmar that he was working on getting her a new car, but a new rental car was never provided.

103.   Mr. Murchie, knowing that Plaintiff didn't have transportation, began to strand Plaintiff Detmar at workstations where Plaintiff would sometimes have to wait for hours to get a ride home.

104.   Both Plaintiffs continued to have to work with the same co-workers about whom they had made complaints of sexual harassment and race discrimination.

105.   On April 3, 2020 Plaintiff Detmar was texted a graphic sexual video by a co-worker named Noah.

106.   Plaintiff Detmar immediately forwarded the video to both Carson Cash, Joint Employers Director of Legal Affairs, and John Murchie, COO.

107.   Plaintiff Detmar requested to not work with Noah, but Plaintiff Detmar continued to have to work with Noah.

108.   Plaintiff Detmar began to be written up in retaliation for her complaints of discrimination.

109.   In July 2020, Joint Employers placed Plaintiff Detmar on a Performance Improvement Plan (PIP) for absences.

110.   Joint Employers placed Plaintiff Detmar on a PIP in retaliation for her complaints of discrimination.

111.   Similarly situated co-workers to Plaintiff Detmar were not placed on a PIP with similar performance to Plaintiff Detmar.

112.   Further, some of the absences that resulted in Plaintiff being placed on a PIP were a result of either her not having a car or her trying to avoid harassers whom she had complained about.

113.   On August 10, 2020 Plaintiff Detmar was called into a meeting with Mr. Eric Cash and his daughter Ms. Cash.

114.   Mr. Cash and Ms. Cash told Plaintiff Detmar that they had evidence that she had stolen from the Joint Employers.

115.   Plaintiff Detmar did not steal.

116.   Mr. Cash and Ms. Cash defamed the Plaintiff when they accused her of theft.

117.   Mr. Cash and Ms. Cash published their defamatory allegations against Plaintiff Detmar in a separation notice which they provided to the state of Georgia.

118.   Mr. Cash and Ms. Cash told Plaintiff that they intended to have her prosecuted unless she signed a release of all her civil claims expressly including her EEOC claims.

119.   Plaintiff Detmar refused to sign the release and has instead elected to pursue her claims in this Court.

120.   Mr. Cash and Ms. Cash have not threatened similarly situated past employees with allegations of crimes or requirements that they sign releases or be prosecuted.

121.   The allegation of theft/crime of compounding was made by the Joint Employers in retaliation for her complaints of discrimination.

122.   Mr. Cash and Ms. Cash have not defamed similarly situated past employees with allegations of crimes or extorted them with the crime of compounding.

123.   The publication of the allegation of theft committed by Plaintiff was made by the Joint Employers in retaliation for her complaints of discrimination.

## COUNT I
## SEXUAL HARASSMENT/SEX BASED HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

124.   Plaintiffs hereby incorporate each and every preceding paragraph as if set forth fully herein.

125.   This Count is asserted by both Plaintiffs against all Joint Employers but not Mr. Cash.

126.   Throughout their employment, Plaintiffs were subjected to sexual harassment and assault by Joint Employers' employees and were forced to work in sexually harassing work environments.

127.   Joint Employers' employees regularly and repeatedly subjected Plaintiffs to sexual innuendos and other forms of sexual harassment, including unwanted physical touching of their bodies.

128.   All of the above conduct by Joint Employers' employees was unwelcome, offensive, and intimidating to Plaintiffs.

129.   Plaintiffs repeatedly complained to their employers that this conduct was unwelcome.

130.   The sexually harassing conduct was open and notorious.

131.   Joint Employers' employees subjected Plaintiffs to a hostile work environment, and no substantive remedial action was taken, for which Defendants are liable.

132.   At all times relevant to this action, Joint Employers knew or should have known of the sexual harassment endured by Plaintiffs and the existence of a sexually hostile work environment but failed to take immediate remedial action to protect Plaintiffs.

133.   Instead, Joint Employers allowed a sexually harassing work environment to exist.

134.   Joint Employers' actions constitute unlawful intentional gender discrimination in violation of Title VII of the Civil Rights Act, as amended.

135.   Joint Employers willfully and wantonly disregarded Plaintiffs' rights, and Defendants' discrimination against Plaintiffs was undertaken in bad faith.

136.   As a result of Joint Employers' unlawful actions, Plaintiffs have suffered emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

## COUNT II
## RACE DISCRIMINATION HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII AND 1981

137.   Plaintiffs hereby incorporates each and every preceding paragraph as if set forth fully herein.

138.   This Count is asserted by both Plaintiffs against all Joint Employers but not Mr. Cash.

139.   Plaintiff Detmar asserts her Title VII and 1981 for race discrimination claim as a claim of association with her daughter Plaintiff Wilson.

140.   Throughout their employment, Plaintiffs were subjected to racially discriminatory statements by Joint Employers' employees and were forced to work in a racially hostile work environment.

141.   Joint Employers' employees regularly and repeatedly subjected Plaintiffs to racially offensive language.

142.   Plaintiffs' work environments as detailed above, subjected them to racially offensive language frequently, interfered with their work, affected them emotionally, made them feel unsafe, and affected their homelife.

143.   All of the above conduct by Joint Employers' employees was unwelcome, offensive, and intimidating to Plaintiffs.

144.   Plaintiffs repeatedly complained to their employers that this conduct was unwelcome.

145.   The racially offensive comments were open and notorious.

146.   Joint Employers' employees subjected Plaintiffs to a hostile work environment, and no substantive remedial action was taken, for which Defendants are liable.

147.   At all times relevant to this action, Joint Employers knew or should have known of the racial harassment endured by Plaintiffs and the existence of a racially offensive work environment, but they failed to take immediate remedial action to protect Plaintiffs.

148.   Instead, Joint Employers allowed racial comments at work to continue.

149.   Joint Employers' actions constitute unlawful intentional race discrimination in violation of both Title VII and 1981.

150.   Joint Employers willfully and wantonly disregarded Plaintiffs' rights, and Defendants' discrimination against Plaintiffs was undertaken in bad faith.

151.   As a result of Joint Employers' unlawful actions, Plaintiffs have suffered emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

## COUNT III
## RETALIATION IN VIOLATION OF BOTH TITLE VII AND 1981

152.   Plaintiffs hereby incorporates each and every preceding paragraph as if set forth fully herein.

153.   This Count is asserted by both Plaintiffs against all Joint Employers. Claims under this count are also asserted against Mr. Cash under 1981, but not Title VII.

154.   Plaintiffs engaged in protected activity under both Title VII and 1981 by repeatedly complaining of sexual harassment, a sexually hostile work environment and race discrimination to Joint Employers.

155.   Plaintiffs were each terminated in retaliation for engaging in protected activity.

156.   Joint Employers' actions constitute unlawful retaliation in violation of both Title VII and 1981.

157.   Joint Employers willfully and wantonly disregarded Plaintiffs' rights and Joint Employers' retaliation against Plaintiffs was undertaken intentionally and in bad faith.

158.   As a result of Joint Employers unlawful actions, Plaintiffs have suffered lost compensation and other benefits of employment, significantly diminished employment opportunities, emotional distress consisting of, but not limited to, outrage, shock, and humiliation, inconvenience, loss of income, and other indignities.

## COUNT IV
## ASSAULT AND BATTERY

159.   Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

160.   This Count is asserted by both Plaintiffs against all Joint Employers but not Mr. Cash individually.

161.   The above-described actions by the employees of the Joint Employers constitute sexual assault and battery.

162.   The Joint Employers willfully and wantonly disregarded Plaintiff Detmar's rights when she was sexually assaulted and battered.

163.   Defendants is liable for the sexual assault and battery of Plaintiff Detmar.

164.   As a result of the Joint Employers unlawful actions, Plaintiff Detmar has suffered lost compensation and other benefits of employment, significantly diminished employment opportunities, emotional distress consisting of, but not limited to, outrage, shock, and humiliation, inconvenience, loss of income, and other indignities.

**COUNT V**
**COMPUNDING**

165.   Plaintiff hereby incorporates each and every preceding paragraph as if set forth fully herein.

166.   This Count is asserted by Plaintiff Detmar against all Joint Employers and Mr. Cash individually.

167.   The above-described actions by Joint Employers' agents Mr. Cash and his daughter Ms. Cash constitute the Crime of Compounding against Plaintiff Detmar.

168.   Specifically, the Joint Employers alleged the crime of theft against Plaintiff Detmar.

169.   The Joint Employers told Plaintiff that they would agree not to prosecute Plaintiff Detmar if she would give them consideration.  In effect, sign a release of her civil claims.

170.   Defendants are liable for Mr. Cash and Ms. Cash's crime of compounding against Plaintiff Detmar.

171.   As a result of the Joint Employers' unlawful actions, Plaintiff Detmar has suffered lost compensation and other benefits of employment, significantly diminished employment opportunities, emotional distress consisting of, but not limited to, outrage, shock, and humiliation, inconvenience, loss of income, and other indignities.

**COUNT VI**
**DEFAMATION**

172.   Plaintiffs hereby incorporate each and every preceding paragraph as if set forth fully herein.

173.   This Count is asserted by Plaintiff Detmar against all Joint Employers and Mr. Cash individually.

174.   The above-described actions by Joint Employers' agents Mr. Cash and Ms. Cash constitute Defamation against Plaintiff Detmar.

175.   Specifically, Mr. Cash and Ms. Cash falsely alleged that Plaintiff Detmar committed the crime of theft.

176.   The Joint Employers published this false allegation when they sent the state of Georgia a separation notice that accused Plaintiff of theft.

177.   Defendants knew or should have known that Plaintiff did not steal.

178.   Defendants are liable for Mr. Cash and Ms. Cash's defamation against Plaintiff Detmar.

179.   As a result of the Joint Employers' unlawful actions, Plaintiff Detmar has suffered lost compensation and other benefits of employment, significantly diminished employment opportunities, emotional distress consisting of, but not limited to, outrage, shock, and humiliation, inconvenience, loss of income, and other indignities.

**COUNT VII**
**<u>NEGLIGENT RETENTION AND SUPERVISION</u>**

180.   Plaintiffs hereby incorporate each and every preceding paragraph as if set forth fully herein.

181.   This Count is asserted by both Plaintiffs against all Joint Employers, but not Mr. Cash individually.

182.   Joint Employers continued the employment of co-workers who were engaged in sexual assault, and both sexual and racially hostile work environments, when they actually knew, constructively knew, or in the exercise of reasonable care should have known of these things were taking place.

183.   Notwithstanding Joint Employers' actual or constructive knowledge of the above and their employee's propensity for both sexual and racial harassment of Plaintiffs, Defendant Joint Employers negligently supervised their employees and failed to intercede on Plaintiffs' behalf, and negligently retained employees thereby ratifying, condoning, and adopting their conduct, making Joint Employers liable for the negligent supervision and retention of the harassing employees.

WHEREFORE, Plaintiffs demand a trial by jury and for the following relief:

(a)   a declaratory judgment that Defendants have engaged in unlawful employment practices in violation of both Title VII and 1981;

(b)   an injunction prohibiting Defendants from engaging in unlawful employment practices in violation of Title VII or 1981;

(c)   full back pay from the date of Plaintiffs' retaliatory terminations, taking into account all raises to which Plaintiffs would have been entitled but for their unlawful terminations, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d)   front pay to compensate Plaintiffs for lost future wages, benefits, and pension;

(e)   compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiffs' emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(f)   punitive damages in an amount to be determined by the enlightened conscious of the jury to be sufficient to punish Defendants for their conduct toward Plaintiffs and deter them from similar conduct in the future;

(g)   reasonable attorney's fees and costs; and

(h)   other and further relief as the Court deems just and proper.

Respectfully submitted this 24th day of November 2020.

/s/ J. Stephen Mixon
J. Stephen Mixon
Georgia Bar No. 514050
steve@mixon-law.com
Attorneys for Plaintiff

THE MIXON LAW FIRM
1691 Phoenix Boulevard
Suite 150
Atlanta, Georgia 30349
Telephone: (770) 955-0100
Facsimile: (678) 999-5039